UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2010 SEP 30 PM 2:09
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| NET PRO TRADING CARD COMPANY, LLC, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| ACE AUTHENTIC SPORTS MEMORABILIA, LLC and JOHN REICHEL, Individually, | ) ) ) ) ) |
| Defendants. | ) |

Case No.: 1:10-cv-1236-JMS-TAB

## COMPLAINT FOR EQUITABLE RELIEF AND FOR DAMAGES

For its Complaint for Equitable Relief and for Damages (hereinafter referred to as the "Complaint") against Defendants, ACE AUTHENTIC SPORTS MEMORABILIA, LLC and JOHN REICHEL, Individually, Plaintiff NET PRO TRADING CARD COMPANY, LLC, hereby states and avers as follows:

### I.   THE PARTIES.

1. NET PRO TRADING CARD COMPANY, LLC (hereinafter referred to as "NETPRO") is a limited liability company organized and existing under the laws of the state of Florida with its principal place of business located at 550 Okeechobee Boulevard, Apartment 809 West Palm Beach, Florida 33401, United States of America.

2. Defendant ACE AUTHENTIC SPORTS MEMORABILIA, LLC (hereinafter referred to as "Ace") is, upon information and belief, a corporation organized and existing under the laws of the Georgia with its principal place of business located at 1770 Briergate Drive Duluth, Georgia 30097.

3. Defendant JOHN REICHEL (hereinafter referred to as "Reichel") is, upon information and belief, an individual who maintains a residence at 1770 Briergate Drive Duluth, Georgia 30097. (Ace and Reichel may hereinafter be collectively referred to as "Defendants").

4. NETPRO, the exclusive owner of the well known, federally protected trademark "NETPRO," trademark application number 85103678 (hereinafter the "Mark"), is the premier tennis trading card company, internationally recognized for its high quality trading card products and history within the sport of tennis. See attached Exhibit 1, Federal Trademark Application for the Mark. NETPRO was the first card company to produce licensed, authentically autographed tennis cards in 1991.

5. Also in its capacity as the exclusive owner of the Mark, NETPRO enforces and protects the Mark from illegal commercial uses of the Mark by third party unauthorized users therof.

## II. JURISDICTION AND VENUE.

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because NETPRO and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the claims in this complaint arise under the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1338, and over the related state claims under the doctrine of supplemental jurisdiction.

8. This Court has personal jurisdiction over Defendants as Defendants have committed acts that have caused tortious injury to NETPRO in this judicial district. Specifically, Defendants have conducted business in this judicial district, by way of, among other means, direct product sales in Indiana and offering its products for sale in Indiana commerce directly

and through its web site at www.aceauthentic.com. In conducting its business in this judicial district in the manner herein complained of, Defendants have caused injury by a series of acts performed in this judicial district and by deriving substantial benefit from goods sold in this judicial district in violation of NETPRO's interests in and to the Mark.

9. Furthermore, Defendant has caused advertising and / or promotional materials and tennis card trading cards and novelties created or used in violation of NETPRO's interest in and to the Mark to be published, distributed, exhibited, or disseminated within this judicial district without the express written consent and to the irreparable harm of NETPRO.

10. Venue is proper in this Court under 28 U.S.C. § 1391(a).

11. In sum, based upon the foregoing and herein contained allegations, Ace is an entity and Reichel is an individual that transact business within the State of Indiana, particularly the Southern District of Indiana, and are therefore both subject to personal jurisdiction in this Court.

### III. BACKGROUND.

12. In 1991, NETPRO became the first trading card company to produce and to offer, in interstate commerce, including Indiana, officially licensed tennis trading cards and other tennis related novelty items.

13. In or about August, 2001, NETPRO, including all rights and interests in and to the Mark, and, without limitation, the associated rights under common law and any and all goodwill associated with the Mark and NETPRO's business and tennis trading card and novelty products, was sold; in 2003, NETPRO produced sets of tennis trading cards, including but not limited to, the first ever signature and match-worn apparel cards.

14. In or about November, 2008, all rights and interests in and to the Mark, and, without limitation, the associated rights under common law and any and all goodwill connected to the Mark and NETPRO's business and tennis card trading and novelty products, was purchased by NETPRO's current ownership.

15. As of the date of filing, NETPRO has begun execution on its plan to release a new line of tennis trading cards in interstate commerce, including Indiana. NETPRO's plan has included last January's private offering of 100, uncirculated originally autographed, Maria Sharapova tennis cards. NETPRO's current ownership purchased all rights and interests in and to the Mark, and, without limitation, the associated rights under common law and any and all goodwill associated with the Mark and NETPRO's business and products so the same high quality products that have become synonymous with the NETPRO mark (the Mark) and which made NETPRO so popular in the past with fans could continue to be provided to consumers.

16. Since 1991, NETPRO is a brand that has been recognized by its high quality products and its history within the sport of tennis, itself, as well as by consumers who are interested and / or participate in the sport of tennis, around the globe.

17. NETPRO's limited edition autographed cards are recognized around the world, including in Indiana, for their high quality and impeccably authentic original autographs which were obtained by NETPRO during sit-down autograph sessions at which the tennis celebrity was able to perfectly execute their autograph on the NETPRO card.

18. Ace is a marketing company which focuses on the sport of tennis; Reichel is an individual and sole member of Ace. Reichel is the alter-ego of Ace and therefore subject to personal liability for the wrongful acts herein complained of.

19. Defendants offer for sale, directly in interstate commerce, including Indiana, and via its web site located at www.aceauthentic.com, tennis trading cards (both autographed and standard cards), autographed tennis novelties and collectibles including but not limited to tennis balls, posters of professional tennis stars, autographed match worn apparel, and other items.

20. NETPRO and Defendants are direct competitors whose products travel in the same channels of trade, are distributed throughout the United States, including Indiana, and are purchased by like minded, similarly situated consumers.

## IV.   ACTS COMPLAINED OF.

21. Defendants currently advertise, market, and sell, in interstate commerce, including but not limited to, Indiana, the "Ace Aces Edition" tennis trading card set at a retail price of $600 each and the "Ace Reserves Edition" tennis trading card set at a retail price of $49.95 each (hereinafter collectively, the "Unauthorized Products").

22. The Unauthorized Products prominently features the Mark and consists of Defendants' tennis trading cards together with certain originally autographed NETPRO tennis trading cards as "chase cards." Defendants claim that the NETPRO cards featured in the Unauthorized Products include but are not necessarily limited to such tennis stars as Roger Federer, Andre Agassi, Pete Sampras, Serena Williams, Venus Williams, Mardy Fish, Rafael Nadal, and Daniela Hantuchova.

23. Specifically, the Unauthorized Products feature re-issued 2003 originally autographed NETPRO tennis trading cards, on and in connection with the Mark appears. See Exhibit 2, a true and accurate depiction of the Unauthorized Product as packaged.

24. Retailers and second sellers have advertised and marketed the Unauthorized Products as "Ace BuyBack Autographed Cards" and, more specifically, for instance, "NETPRO Andre Agassi Ace Buyback" cards.

25. Further, Reichel, individually and apart from Ace, upon information and belief, using the e-bay Seller ID, johanmetman (Alpharetta, Georgia), sold the first Unauthorized Products listed on eBay, including the serial numbered #01/50 cards. Each card in question in this Ebay listing was characterized as: 2003 NetPro (Player Name) Ace Buyback Auto RC #d xx/50 which caused confusion to potential consumers of NETPRO products.

26. NETPRO has not authorized Defendants' use of the Mark in interstate commerce on, in, and in connection with the Unauthorized Products.

27. As a direct and proximate result of Defendants' afore-described unauthorized use of the Mark, in interstate commerce, including Indiana, the NETPRO brand has been weakened and devalued because NETPRO has no control over how Defendants advertise, market, and / or sell the Unauthorized Products, prominently featuring the Mark, and packaged by Defendants as the "Ace NETPRO Buy Back Autographs."

28. Furthermore, as a result of Defendants' unauthorized use of the Mark, collectors will have no desire to purchase NEPTRPO Buy Back products in the future because the NETPRO Buy Back products have already been released by Defendants as "Ace NETPRO Buy Back" products without NETPRO's involvement, oversight, and / or quality control which factors have become synonymous with NETPRO's products over the years.

29. As a direct and proximate result of Defendants' unauthorized and infringing activities, NETPRO, at the most critical point in its business, has lost the opportunity to offer consumers NETPRO Buy Back Rookie Cards from 1991 – 2003 because Defendants, without

authorization, have already sold NETPRO Buy Back Rookie cards in its "Ace NETPRO Buy Back" products.

30.  As a result of Defendants' unauthorized and infringing actions as herein described, NETPRO has lost the opportunity to issue buy back rookie cards originally released by NETPRO in 1991 and 2003; the release of such buy back cards, because of the overall quality of the cards themselves and / or the original autographs that appear thereon, would allow NETPRO, at the most critical time of its business, to lawfully gain market share in the business of tennis trading cards and novelty items.

31.  Based upon the foregoing, Defendants' unauthorized use of the Mark without NETPRO's prior express authorization has resulted in irreparable harm to NETPRO, which harm is continuing to accumulate and accrue.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER
## SECTION 32(1) OR 43(A) OF THE LANHAM ACT

32.  NETPRO repeats and realleges the allegations in Paragraphs 1 through 31.

33.  Defendants' knowing, intentional, willful, malicious, and unauthorized use of the Mark, in interstate commerce, including Indiana, infringes upon NETPRO's exclusive rights in and to 's federally protected trademark and, as such, is in violation of §§ 32(1) or 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) or 1125(a), in that Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive as to source, sponsorship, connection, association, or affiliation between NETPRO and Defendants.

34.  Defendants' unauthorized and infringing activities have been knowing, intentional, willful, deliberate, and malicious, and its misuse of the Mark was done with the

intent to trade upon the goodwill and reputation of NETPRO and the Mark, and to unfairly compete with NETPRO and to damage and injure NETPRO and its business.

35. NETPRO's rights have been and will continue to be irreparably harmed as a result of Defendant's misconduct as herein alleged unless and until Defendants are enjoined from the unauthorized use of the Mark.

36. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT II
## FALSE ENDORSEMENT UNDER LANHAM ACT § 43(A)

37. NETPRO repeats and realleges the allegations in Paragraphs 1 through 36.

38. Defendants have and continue to knowingly, intentionally, willfully, and maliciously use the Mark in interstate commerce, including Indiana, on or in connection with the Unauthorized Products.

39. The Unauthorized Products falsely represent that they are authorized by NETPRO when they are not. For example, Defendants have represented to the public, on and in connection with Unauthorized Products themselves, that their use of certain player images was authorized by NETPRO when, in fact, Defendants received no such authorization.

40. Defendants' advertising, marketing, and promotion of the Unauthorized Products bear the Mark, which, collectively, falsely represents that Defendants have authorization to use the Mark.

41. Defendants' use of the Mark on Unauthorized Products constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with NETPRO and / or as to the sponsorship

or approval of Unauthorized Products by NETPRO in violation of Lanham Act § 43(A), 11 U.S.C. § 1125(A).

42. The potential for likelihood of confusion is great in particular because of the identical nature of the Unauthorized Products and products rightfully advertised, marketed, promoted, and sold by NETPRO.

43. Defendants' unauthorized use of the Mark on the Unauthorized Products is likely to cause economic harm to NETPRO because Defendant's use will unilaterally render NETPRO's ability to advertise, promote, market, and, ultimately, to sell its own line of previously released NETPRO cards.

44. Defendants' unauthorized and infringing activities as herein complained of have been knowing, intentional, willful, deliberate, and malicious, and its misuses were done with the intent to trade upon the goodwill and reputation of NETPRO, and to unfairly compete with NETPRO and to damage and injure NETPRO and its business.

45. NETPRO's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their exploitative and infringing commercial business practices and from using the Mark on or in connection with the Unauthorized Products themselves.

46. NETPRO's remedy at law is inadequate to prevent further violation of their rights.

### COUNT III
### FALSE ADVERTISING UNDER LANHAM ACT § 43(A)

47. NETPRO repeats and realleges the allegations in Paragraphs 1 through 46.

48. Defendants have and continue to knowingly, intentionally, willfully, and maliciously use the Mark in interstate commerce, including Indiana, on or in connection with the Unauthorized Products themselves.

49. The Mark is used on and in connection with Defendants' advertising, marketing, and promotion of the Unauthorized Products which use, in turn, misrepresents the nature, characteristics, and / or qualities of the Unauthorized Products by falsely representing that the Unauthorized Products are sponsored, endorsed, and / or approved by NETPRO. Defendants' activities constitute false advertising in violation of Lanham Act § 43(A), 11 U.S.C. § 1125(A).

50. Defendants' unauthorized and infringing activities, as herein complained, of have been knowing, intentional, willful, deliberate, and malicious, and its misuses were done with the intent to trade upon the goodwill and reputation of NETPRO, to unfairly compete with NETPRO, and to damage and injure NETPRO and its business.

51. NETPRO's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their exploitative and infringing commercial business practices and from using the Mark on and / or in connection with the Unauthorized Products.

52. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

53. NETPRO repeats and realleges the allegations in Paragraphs 1 through 52.

54. Defendants have knowingly, intentionally, willfully, and maliciously incorporated and used the Mark on and in connection with the Unauthorized Products, sold in interstate

commerce, including Indiana, by Defendants without authorization and in contravention of the common law claim for unfair competition.

55. Defendants' use of the Mark is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of the Unauthorized Products and Defendants with NETPRO and / or NETPRO's products, or as to the sponsorship or approval of the Unauthorized Products by NETPRO.

56. Defendants' actions constitute misappropriation of the Mark.

57. Defendants' unlawful activities are knowing, intentional, willful, deliberate, and malicious, and their illegal use of the Mark on and / or in association with the Unauthorized Products was done with full knowledge of the proprietary nature of the Mark.

58. Defendants have engaged in their unlawful actions with the intent to trade upon the goodwill and reputation of NETPRO, to unfairly compete with NETPRO, and to irreparably injure NETPRO and its business.

59. NETPRO's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their exploitative and infringing commercial business practices.

60. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT V
## UNJUST ENRICHMENT

61. NETPRO repeats and realleges the allegations in Paragraphs 1 through 60.

62. At the expense of and detriment to and without the prior express (or implied) authorization of NETPRO, Defendants have been unjustly enriched through their knowing,

intentional, willful, and malicious actions of using the Mark in interstate commerce, including Indiana.

63. NETPRO's business, goodwill, and reputation have been and will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their exploitative and infringing commercial business practices.

64. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT VI
## CONVERSION

65. NETPRO repeats and realleges the allegations in Paragraphs 1 through 64.

66. By engaging in the conduct as herein described and complained of, Defendants have exerted unauthorized control over the property of another with the intent to deprive NETPRO of its benefit, to wit: use and exclusivity of the Mark to which NETPRO is the sole interest holder.

67. On the basis of Defendants' unlawful and illegal actions as herein complained of, Defendants have committed conversion as defined under Indiana law at I.C. § 35-43-4-3.

68. Defendants' commission of conversion has proximately caused NETPRO to suffer damages in a sum as yet to be ascertained but which damages continue to accrue and accumulate.

69. NETPRO will continue to be irreparably harmed by Defendants unless Defendants are enjoined from their unlawful business practices which constitute conversion under Indiana law.

70. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT VII
## DECEPTION

71. NETPRO repeats and realleges the allegations in Paragraphs 1 through 70.

72. By engaging in the conduct as herein described and complained of, Defendants have disseminated to the public products and / or advertisement that the Defendants knows is false, misleading, or deceptive, with intent to promote the purchase or sale of the Unauthorized Products.

73. On the basis of Defendants' unlawful and illegal actions as herein complained of, Defendants have committed deception as defined under Indiana law at I.C. § 35-43-5-3(a)(6).

74. Defendants' commission of deception has proximately caused NETPRO to suffer damages in a sum as yet to be ascertained but which damages continue to accrue and accumulate.

75. NETPRO will continue to be irreparably harmed by Defendants unless Defendants are enjoined from its unlawful business practices which constitute deception under Indiana law.

76. NETPRO's remedy at law is inadequate to prevent further violation of its rights.

## COUNT VIII
## INDIANA CRIME VICTIMS' ACT

77. NETPRO repeats and realleges the allegations in Paragraphs 1 through 76.

78. Under the Indiana Crime Victims' Act, Ind. Code § 35-24-3-1, a person that suffers pecuniary loss as a result of a violation of Ind. Code § 35-43 *et seq.*, may bring a civil action as against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

79. Defendants have violated Ind. Code § 35-43 through their knowing, intentional, willful, and malicious commission of the following offenses: a. "Conversion" as defined in Ind. Code § 35-43-4-3; and b. "Deception" as defined in Ind. Code § 35-43-5-3.

80. NETPRO is victim of Defendants' knowing, intentional, willful, and malicious criminal violations and, as a result, NETPRO has suffered actual pecuniary damages.

81. Accordingly, NETPRO is entitled to an award, as against Defendants, of those actual damages as well as statutory treble damages, corrective advertising damages, costs, and reasonable attorneys' fees.

## V.  DEMAND FOR JURY.

82. NETPRO hereby respectfully requests that all issues herein raised by this Complaint for Equitable Relief and for Damages be tried by Jury.

WHEREFORE, Plaintiff NET PRO TRADING CARD COMPANY, LLC ("NETPRO"), by counsel, Theodore J. Minch, hereby prays for judgment as against Defendants ACE AUTHENTIC SPORTS MEMORABILIA, LLC ("Ace") and JOHN REICHEL, individually ("Reichel") (collectively "Defendants") where said judgment may include but may not necessarily be limited to the following relief:

    a. An injunction enjoining Defendants from future use of the Mark, as defined herein, in whatever form;

    b. An order directing Defendants' immediate and complete surrender of any and all (if any) merchandise, designs, plans, marketing materials, advertisements, conceptuals, etc. featuring the Mark;

      c.     An award of damages including but not necessarily limited to treble damages, costs, and attorneys' fees as set forth in the applicable statutes in an aggregate amount that is, as yet, undetermined, but which amount continues to accrue; and

      d.     All other just and proper relief in the premises.

DATED: September 30, 2010

Respectfully submitted,

_____
Theodore J. Minch (IN#18798-49)
Attorney for NET PRO TRADING
       TRADING CARD COMPANY, LLC
SOVICH MINCH, LLP
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
(317) 335-3601